**Paul BAERWALD, Plaintiff–Appellant,**

v.

**CITY OF MILWAUKEE, et al., Defendants–Appellees.**

**No. 97–1460.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 5, 1997.

Decided Dec. 9, 1997.

Robert B. Corris (argued), Milwaukee, WI, for Plaintiff–Appellant.

Bruce Schrimpf (argued), Office of the City Attorney, Milwaukee, WI, Heidi A. Wick, Milwaukee City Attorney's Office, Milwaukee, WI, for Defendants–Appellees.

Timothy E. Hawks, Shneidman, Myers, Dowling & Blumenfield, Milwaukee, WI, for Amicus Curiae.

Before POSNER, Chief Judge, and BAUER and ROVNER, Circuit Judges.

POSNER, Chief Judge.

A wholly unnecessary employment dispute has spawned two years of federal litigation and more than 100 pages of briefs in this court. It is not the stuff of which constitutional cases should be made.

The facts, greatly abridged and slanted in the plaintiff's favor because the district judge granted summary judgment for the defendants, are as follows. Paul Baerwald, a Milwaukee firefighter, injured his back and shoulder while on the job and was placed on injury leave; during this period, which began in May of 1991, he received 80 percent of his salary, tax free, plus free medical care for his injuries. In February of the following year, the City's Employment Benefits Division, which administers the injury-leave program, pronounced Baerwald fit to return to duty, but the Fire Department told him that he couldn't return to work without a release from injured status from his treating physician, a Dr. Rosler. Rosler refused to release Baerwald, so the department placed him on sick leave. This entitled him to receive his full salary, not just 80 percent. But unlike injury leave, sick leave is taxable, of limited duration, and doesn't cover medical expenses. Baerwald wanted to be allowed to return to work, or failing that returned to injury-leave status. The Fire Department agreed with his lawyer that he would be examined by the department's physician, Dr. McCabe, at the expense of the Employment Benefits Division, and would abide by McCabe's findings.

The examination was conducted in September, and Baerwald's lawyer asked McCabe for an opinion regarding her client's fitness to return to work. McCabe refused to give her the report unless she paid him a $250 fee. She refused. McCabe sent the Division a "return to work" slip, but when the Fire Department's deputy chief, Gengler, learned of this he persuaded McCabe to retract the release, and as a result Baerwald remained on sick leave; why he was not returned to *injury* leave is unclear. Neither Baerwald nor his lawyer was informed either of the release or of its retraction.

McCabe examined Baerwald again in November and on the basis of Baerwald's complaints about pain advised Baerwald that he (McCabe) could not release him to return to work, given the strenuous nature of a firefighter's duties. On December 27, 1992, Baerwald's entitlement to paid sick leave ran out, and he took an unpaid leave of absence until, after another examination by McCabe, conducted in August of the following year, he was pronounced fit to return to duty at last and did so. Until his reinstatement he had spent 250 days on unpaid leave, and he is suing for the salary he would have received had he been on duty during that time, as he argues he should have been, and for other relief unnecessary to discuss separately.

How such a *contretemps* could give rise to a violation of the Constitution of the United States might well puzzle someone uninitiated into the mysteries of modern constitutional law. Baerwald's argument is that because by statute and contract he could not be discharged from his firefighter's job without cause, his job was "property" within the meaning of the due process clause of the

Fourteenth Amendment, of which the defendants (the City, Gengler, and other officials) could not deprive him without due process of law. So far, he is on solid ground. E.g., *Board of Regents v. Roth,* 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972); *Zemke v. City of Chicago,* 100 F.3d 511, 513 (7th Cir.1996); *Mandel v. Allen,* 81 F.3d 478, 480 (4th Cir.1996). The sands begin to shift beneath him when he tries to explain how he was deprived of his property by the defendants' actions. He did not, of course, lose his job, though he did lose almost a year's pay by reason of having run out of paid sick leave. But it cannot be that every dispute over sick leave, or every interruption in pay because of an injury or illness, or every denial of a fringe benefit (parking privileges?), is, unlike discharge, *Domiano v. Village of River Grove,* 904 F.2d 1142, 1147–49 (7th Cir.1990), or suspension without pay, *Narumanchi v. Board of Trustees,* 850 F.2d 70, 72 (2d Cir.1988), or permanent refusal to reinstate, *Buttitta v. City of Chicago,* 9 F.3d 1198, 1204 (7th Cir.1993), a constitutional controversy just because the employee is a tenured public employee. *Glatt v. Chicago Park District,* 87 F.3d 190, 192–93 (7th Cir. 1996); *Swick v. City of Chicago,* 11 F.3d 85, 87–88 (7th Cir.1993); *Brown v. Brienen,* 722 F.2d 360, 364–65 (7th Cir.1983); *Local 342 v. Town Board,* 31 F.3d 1191, 1195–96 (2d Cir. 1994); *San Bernardino Physicians' Services Medical Group, Inc. v. County of San Bernardino,* 825 F.2d 1404, 1408–09 (9th Cir. 1987); *Costello v. Town of Fairfield,* 811 F.2d 782, 784 (2d Cir.1987). Even if a deprivation is not de minimis, *Swick v. City of Chicago, supra,* 11 F.3d at 87; *Hessel v. O'Hearn,* 977 F.2d 299, 303–04 (7th Cir. 1992), we know from *Sandin v. Conner,* 515 U.S. 472, 485–86, 115 S.Ct. 2293, 2300–01, 132 L.Ed.2d 418 (1995), that deprivations of liberty (and even more clearly, we should think, of property) are not actionable under the Constitution unless they are atypical and significant in relation to the inevitable "deprivations" that people suffer as a result of contractual disputes and the other ordinary frictions of life.

■ Nevertheless it is consistent with this principle that if Gengler had schemed to suspend Baerwald for 250 days without pay—the disability being merely a pretext—this would count as the deprivation of constitutionally protected property, and so would be actionable under the due process clause of the Fourteenth Amendment if, for want of notice or a hearing, the suspension was a denial of due process. Otherwise the rule that a tenured public employee has constitutional property in his job could easily be circumvented. But that is not what happened in this case. The Fire Department had a rule that, whatever the Employment Benefits Division might say, it would not reinstate an injured firefighter unless he had a release to return to work from the physician who was treating him for the injury. The rule is entirely reasonable, since the benefits division's primary concern is fiscal and this may lead it to pronounce a city worker's injury healed before it is, while the Fire Department has a legitimate and indeed compelling concern, because of the danger that an injured firefighter poses not only to himself but also to the public and the other members of the firefighting team, *Evans v. City of Evanston,* 881 F.2d 382, 385 (7th Cir.1989), with making sure that the firefighter is indeed fully recovered before it reinstates him. Cf. *Buttitta v. City of Chicago, supra,* 9 F.3d at 1204. Reasonable or not, the rule requiring a doctor's release from injury leave or sick leave raises no question under the due process clause. It does not infringe, it merely defines, *see Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709; *Glatt v. Chicago Park District, supra,* 87 F.3d at 192, the firefighter's employment rights: if he is injured, he can't return to work without a release from his doctor, even if the doctor's refusal to give the release results in the firefighter's eventually spending a spell of time on unpaid leave because the benefits administrators have declared him fit and his paid sick-leave benefits have run out. He has a right to employment, but he does not have a right to continuous employment. *Listenbee v. City of Milwaukee,* 976 F.2d 348 (7th Cir.1992).

It was the rule that prevented Baerwald from being reinstated until August of 1993; and the rule established a condition of his employment. *See Christ Gatzonis Electrical*

*Contractor, Inc. v. New York City School Construction Authority*, 23 F.3d 636, 640–41 (2d Cir.1994). Indeed, had the rule not been bent to allow McCabe to release him, he might still be on unpaid leave, for Dr. Rosler never issued him a release, and for all we know neither would another responsible doctor have done so—for Baerwald persisted in his claim of severe pain, a claim related to other legal remedies that he was pursuing growing out of the injury to his back.

■ Baerwald argues that Gengler "conspired" with McCabe to keep Baerwald on sick leave. If there was such a conspiracy, it may have violated the agreement that Gengler had made with Baerwald's lawyer; it did not violate the Constitution, as there is no argument, and could be no argument, that *that* agreement conferred property on Baerwald. Otherwise every breach of a public contract would be litigable under the Constitution, and that is not the law. *Mid–American Waste Systems, Inc. v. City of Gary*, 49 F.3d 286, 289–91 (7th Cir.1995); *Yatvin v. Madison Metropolitan School District*, 840 F.2d 412, 416 (7th Cir.1988); *Martz v. Incorporated Village of Valley Stream*, 22 F.3d 26, 30–31 (2d Cir.1994); *Unger v. National Residents Matching Program*, 928 F.2d 1392, 1397–99 (3d Cir.1991).

Nor is it argued that the agreement supplanted the rule requiring a release by the treating physician. Rather, the agreement waived the rule: if McCabe cleared Baerwald to return to work, the Fire Department would not insist on a release from the treating physician. It was still open to Baerwald, when in November he found out that McCabe would not clear him, to obtain a release from his treating physician before his sick-leave benefits expired the following month. We may assume that he could not have obtained a release from Dr. Rosler. All he had to do, however, was to get himself another treating physician. Candidates included the two physicians who had advised the benefits division that Baerwald was fit to return to work. Although the Fire Department will not accept the division's say-so that a firefighter is fit to return to work, it accepts the say-so of any physician, provided only that he is the firefighter's treating physician. As we said earlier, it might be that no physician, reputable or otherwise, would have certified Baerwald to return to work in December of 1992, given his continuing complaints of severe pain. But that would prove that he wasn't fit to return to work. It would be a clear vindication of the department's rule.

At argument, Baerwald's present lawyer acknowledged that Baerwald could have hired another physician, who would have given him his release, and the Fire Department would then have reinstated him. He could not explain why Baerwald—advised by counsel—failed to do that, beyond the lame excuse that Baerwald and the lawyer thought that Baerwald was entitled to McCabe's report without having to pay $250 for it. The report would not have helped him. It only released him contingent on a further examination, and after the further examination McCabe refused to release him for work. The "return to work" slip was separate, apparently an error, and in any event promptly retracted.

The case thus comes down to Baerwald's failure to obtain a release from his treating physician before his paid sick-leave benefits ran out. Either he (or his attorney) unaccountably overlooked this option, or he really was still disabled then and didn't recover until months later, when he returned to McCabe and this time was released. In either event, we cannot find any violation of Baerwald's constitutional rights, and the judgment for the defendants is therefore

AFFIRMED.