Kevin LYNCH and Kevin
Babineau, Plaintiffs,

v.

Sheila HUBBARD, Chairperson,
Massachusetts State Parole
Board, Defendant.

Civil Action No. 97–12458–GAO.

United States District Court,
D. Massachusetts.

April 15, 1999.

Kevin Lynch, Shirley, MA, pro se.

Kevin Babineau, Shirley, MA, pro se.

William J. Meade, Asst. Atty. Gen., Boston, MA, for defendant.

### MEMORANDUM AND ORDER

O'TOOLE, District Judge.

Pro se plaintiffs Kevin Lynch and Kevin Babineau are currently incarcerated in the Massachusetts Correctional Facility at Shirley, Massachusetts. Each is eligible for parole and has been denied parole at least once. Lynch and Babineau filed this suit under 42 U.S.C. § 1983 ("section 1983"), seeking a declaratory judgment that one of the Massachusetts statutes governing parole of state prisoners, Mass. Gen.Laws ch. 127, § 130, is unconstitutionally vague (Count I), and that the Massachusetts Parole Board denied them due process by allowing crime victims and their families to speak at parole hearings while refusing to permit the plaintiffs' families and friends to be heard (Count II). They also assert that the Parole Board's hearings fail to comply with other provisions of applicable Massachusetts law (Count III). In addition to declaratory relief, the plaintiffs seek a prospective injunction.

The defendant, Sheila Hubbard, who is Chairperson of the Parole Board, has moved to dismiss plaintiffs' suit with prejudice, arguing that the Court lacks subject matter jurisdiction, that the plaintiffs' claims are not cognizable under section 1983, and that the plaintiffs have failed to state a claim upon which relief may be granted.

### Eleventh Amendment

■ The defendant first argues that the Eleventh Amendment to the United States Constitution bars the plaintiffs' suit. As to Counts I and II, which seek declaratory and prospective injunctive relief to compel a state official to conform her agency's activities to the requirements of the federal constitution, the argument is meritless. *See Ex parte Young*, 209 U.S. 123, 155–56, 159, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *See also Edelman v. Jordan*, 415 U.S. 651, 664, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

Count III, however, seeks an injunction requiring a state official to act conformably with *state* law. The Eleventh Amendment does prevent such a claim from being litigated in a federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Accordingly, Count III must be dismissed.

### Section 1983

■ The defendant argues that the plaintiffs' due process claims may not be brought under section 1983, but rather must be presented, if at all, in a petition for a writ of habeas corpus under 28 U.S.C. § 2254. When a state prisoner challenges the fact or duration of his confinement, the exclusive federal remedy is a writ of habeas corpus. Such claims are not cognizable under section 1983. *See Heck v. Humphrey*, 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *see also Edwards v. Balisok*, 520 U.S. 641, 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). To discover whether *Heck* bars a plaintiff's suit, a court must determine "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of [the

plaintiff's] conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck,* 512 U.S. at 487, 114 S.Ct. 2364. *Heck* has been applied to bar section 1983 suits challenging parole revocation proceedings, *White v. Gittens,* 121 F.3d 803, 806 (1st Cir.1997), but neither the Supreme Court nor the First Circuit has applied *Heck* to preclude a suit under section 1983 that challenges the procedures and standards pertaining to a parole board's determination whether to grant a prisoner release on parole in the first place.

■ These plaintiffs present the latter class of suit. If their action should succeed, the consequence would be better (*i.e.,* constitutionally satisfactory) parole hearings in the future. The plaintiffs seek neither to reverse a prior denial of parole nor to require a future grant. Rather, they want what they contend would be a fairer consideration of their candidacy for parole. This outcome would not result in a judgment that "would necessarily imply the invalidity [of their] conviction[s] or sentence[s]." *See Heck,* 512 U.S. at 487, 114 S.Ct. 2364. Accordingly, the rule of *Heck* does not apply, and the plaintiffs may rely on section 1983 to assert their claims.

### Due Process Claims

In Count I, the plaintiffs challenge the constitutionality of Mass.Gen.Laws ch. 127, § 130, which authorizes the Parole Board to grant a parole permit to a state prisoner "only if the [Board] is of the opinion that there is a reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society." The plaintiffs' argument is that this standard is too general and too subjective to satisfy the requirements of the Fourteenth Amendment's Due Process Clause. In Count II, they claim that the Parole Board violated their rights to due process at their respective parole hearings by not permitting their own family members to speak while at the same hearing permitting members of their victims' families to speak.

The plaintiffs have failed to state in either count a claim upon which relief can be granted, for a fundamental reason: When the Massachusetts Parole Board decides not to grant a prisoner a parole permit, it does not deprive him of a liberty interest protected under the Fourteenth Amendment, and thus the Due Process Clause does not apply to the decision not to grant parole.

■ "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). A valid conviction extinguishes the prisoner's right to liberty for the duration of his sentence. *Id.(citing Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)). That he might possibly be released on parole short of the expected expiration date of his sentence gives the inmate "a mere hope," rather than a liberty interest. *Greenholtz,* 442 U.S. at 11, 99 S.Ct. 2100.

■ Nevertheless, a state may create a liberty interest where none inherently exists by enacting provisions governing parole that give an inmate a reasonable expectation that he will be released if certain specified criteria are met. *See Board of Pardons v. Allen,* 482 U.S. 369, 373, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987); *Greenholtz,* 442 U.S. at 12, 99 S.Ct. 2100. In both *Allen* and *Greenholtz,* the parole statutes at issue contained mandatory language that created a presumption that if certain enumerated criteria were satisfied in the inmate's favor, he would be released. *Allen,* 482 U.S. at 373, 376–77, 107 S.Ct. 2415.

■ The Massachusetts statute does not create such an expectation or presumption. Unlike the statutes involved in *Greenholtz* and *Allen*, it is phrased negatively:

> No prisoner shall be granted a parole permit merely as a reward for good conduct but only if the parole board is of the opinion that there is a reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society.

Mass.Gen.Laws, ch. 127, § 130. The Supreme Court has also noted that statutes that employ a language structure like that of the Massachusetts statute can be distinguished from the ones containing mandatory phrasing that give rise to the liberty interest. *See Allen,* 482 U.S. at 378 n. 10, 107 S.Ct. 2415. The Court further noted that "[m]ost courts have found that such statutes set forth criteria that *must* be met before release, but that they do not *require* release if those findings are made." *Id.* (emphasis in original).

The Massachusetts courts' also have explicitly distinguished the Commonwealth's statute from the one considered in *Greenholtz, see Commonwealth v. Hogan,* 17 Mass.App.Ct. 186, 456 N.E.2d 1162, 1165 (1983), and have characterized it as one that grants "broad discretion" to the Parole Board. *Stewart v. Chairman of the Mass. Parole Bd.,* 35 Mass.App.Ct. 843, 626 N.E.2d 897, 900 (1994). In fact, the Supreme Judicial Court has specifically rejected the proposition that the Massachusetts statute creates a liberty interest in the possibility of parole under the *Greenholtz* analysis. *See Greenman v. Massachusetts Parole Bd.,* 405 Mass. 384, 540 N.E.2d 1309, 1312–13 n. 3 (1989) ("The individual characteristics of the Massachu-setts statutory parole scheme do not give rise to a liberty interest under Federal law.").[1]

The Supreme Court has more recently expressed disapproval of the mode of analysis outlined in Greenholtz and Allen, but the change is hardly favorable to the plaintiffs. In *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Court redirected the focus of the "liberty interest" inquiry away from a parsing of the language of the State's statutes or regulations and back to an assessment of the nature of the deprivation at issue. *See id.* at 483, 115 S.Ct. 2293. After acknowledging the principle recognized in the prior cases that "[s]tates may under certain circumstances create liberty interests which are protected by the Due Process Clause," the Court explained that principle by saying that "these interests will generally be limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S.Ct. 2293. *Sandin* itself was concerned with segregated confinement of a prisoner as a sanction for a disciplinary infraction, and the Court held that the inmate's punitive confinement "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 486, 115 S.Ct. 2293. The Court also noted that the case did not involve an action by the State that would "inevitably affect the duration of his sentence." *Id.* at 487, 115 S.Ct. 2293.

*Sandin*'s prescription was articulated in the context of administrative discipline of inmates, and there is some debate whether it ought to be employed at all in other contexts.[2] Nevertheless, the Court of Appeals for this circuit has employed the *Sandin* mode of analysis to hold that an

---

**1.** Although that latter conclusion is not binding here as a matter of federal constitutional law, the state courts' interpretation of the scope of the Parole Board's discretion is authoritative as a matter of state law and thus relevant to the constitutional inquiry. *See Greenholtz,* 442 U.S. at 12, 99 S.Ct. 2100 (noting relevance of state courts' interpretation of statutory provisions). *See also Hamm v. Latessa,* 72 F.3d 947, 954–55 (1st Cir.1995).

**2.** *See Ellis v. District of Columbia,* 84 F.3d 1413, 1417–18 (D.C.Cir.1996) (declining to apply the *Sandin* approach to a parole release

inmate does not have a liberty interest in being given an expected, but not mandated, parole hearing, *see Hamm v. Latessa,* 72 F.3d 947, 956 (1st Cir.1995), nor in the loss of work-release privileges. *See Dominique v. Weld,* 73 F.3d 1156, 1161 (1st Cir.1996).

It may always have been difficult, but post-*Sandin* it is impossible to conceive how making *no change* in a prisoner's incarcerated status could deprive him of liberty. His original sentence deprived him of liberty. *See Meachum v. Fano,* 427 U.S. at 224, 96 S.Ct. 2532. The revocation of parole and reincarceration also would deprive him of liberty. *See Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). But the interest that a confined prisoner has in the possibility of being released earlier than the expiration of his sentence is of a quality substantially different from the interest a paroled prisoner at liberty has in not being reconfined. *See Greenholtz,* 442 U.S. at 9, 99 S.Ct. 2100. A decision to deny parole, where the grant or denial of parole is subject to the broad discretion of the executive, is not a withdrawal of something that the inmate has, but merely of something he *hopes to have. See id.* at 11, 99 S.Ct. 2100 ("That the state holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained.").

The conclusion that these plaintiffs have not identified a liberty interest sufficient to invoke the protection of the Due Process Clause is bolstered by recent decisions finding no liberty interest in other discretionary sentence-reducing benefits. In *Ohio Adult Parole Auth. v. Woodard,* 523 U.S. 272, 118 S.Ct. 1244, 1251, 140 L.Ed.2d 387 (1998), the Supreme Court said that where there is broad executive discretion to grant clemency or not, an inmate has "no substantive expectation of clemency,"

and therefore, under *Sandin*'s analysis, the state's clemency proceedings that lacked certain procedural protections the inmate argued for did not impose " 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Id.* 118 S.Ct. at 1251 (*quoting Sandin,* 515 U.S. at 484, 115 S.Ct. 2293). The Court observed, "A denial of clemency merely means that the inmate must serve the sentence originally imposed." *Woodard,* 118 S.Ct. at 1251. Similarly, in *Jacks v. Crabtree,* 114 F.3d 983 (9th Cir.1997), the Court of Appeals for the Ninth Circuit dismissed an argument that the petitioners had a liberty interest in a reduction of their sentences under 18 U.S.C. § 3621(c)(2)(B), which permits (but does not mandate) a reduction for inmates who successfully complete a drug treatment program. After quoting the familiar *Sandin* formulation, the Court observed that "denial merely means that the inmate will have to serve out his sentence as expected." *Jacks,* 114 F.3d at 986 n. 4.

So it is here. The fact that the plaintiffs have not been paroled simply means that they will continue to serve the sentence that lawfully deprived them of their liberty. Since no liberty interest is at stake, the Due Process Clause does not pertain. The plaintiffs have failed to state a claim upon which relief can be granted.

### Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED with prejudice as to Counts I and II. Count III is dismissed without prejudice for want of jurisdiction.

It is SO ORDERED.

---

determination). On the other hand, one court has brought *Sandin* outside the prison context entirely. *Baerwald v. City of Milwaukee,* 131 F.3d 681, 683 (7th Cir.1997) (generalizing the *Sandin* principle as follows: "[W]e know from [*Sandin*] that deprivations of liberty (and even more clearly, we should think,

property) are not actionable under the Constitution unless they are atypical and significant in relation to the inevitable 'deprivations' that people suffer as a result of contractual disputes and the other ordinary frictions of life.").